| | |
|---|---|
| VINCENT HARRIS | CIVIL ACTION |
| VERSUS | 17-692-SDD-EWD |
| LABOR FINDERS INTERNATIONAL, INC. | |

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendant, Labor Finders International, Inc. ("Defendant"). Plaintiff, Vincent Harris ("Plaintiff"), appearing *pro se*, has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the reasons which follow, the Court finds that Defendant's motion should be granted.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a staffing and employment agency with offices throughout Louisiana and Mississippi that provides temporary workers to businesses primarily engaged in the fields of construction, manufacturing, and hospitality.[4] Plaintiff is an African American and a practicing Muslim.[5] Plaintiff was hired by Defendant's Baton Rouge, Louisiana office at the end of August 2016, and he was supervised by Gary Mueller ("Mueller") and/or Lydia Francis ("Francis"), who were in charge of the Baton Rouge office.[6] Plaintiff claims he

---

[1] Rec. Doc. No. 32.
[2] Rec. Doc. Nos. 36 & 46.
[3] Rec. Doc. No. 50.
[4] Defendant cites to its website https://www.laborfinders.com.
[5] *Id.* at 61 (Deposition of Vincent Harris, p. 171).
[6] Rec. Doc. No. 32-2 at 3, 5-6, 14 (Deposition of Vincent Harris, pp. 43; 47-48; 59). Plaintiff had previously
49849

told Francis that he was Muslim within the first two weeks of his employment, but he did not mention it again and did not wear any religious garments while working.[7] Plaintiff worked for Defendant from August 2016 until March 23, 2017, after which he never returned to Defendant's office nor did he ever again seek work from Defendant.[8] Plaintiff acknowledged in his deposition that Defendant did not fire him.[9]

As a temporary employee of Defendant, Plaintiff was to report to the Baton Rouge office at 5:30 a.m. each morning to receive a work assignment if one was available.[10] Workers commonly referred to these job assignments as "tickets."[11] Defendant did not guarantee work every day.[12] If Plaintiff was late to the office or did not show up, he risked not receiving an assignment;[13] however, Plaintiff usually received work on the days that he reported to the office.[14] When Plaintiff reported, Francis or Mueller would call out Plaintiff's name, tell him where he would be working, and once Plaintiff received the "ticket," he would join the carpool and perform the work for that day.[15] Once the job was completed, Plaintiff would return to the Baton Rouge office with signed paperwork showing the hours he worked, and Defendant would pay Plaintiff for the job.[16]

On occasion, Defendant would assign Plaintiff to "repeat tickets" in which Plaintiff would return to the same job during a certain time period.[17] The ticket itself would contain

---

worked for Labor Finders in Shreveport from 2001-2004 and in the Baton Rouge office location in 2008. *Id.*
[7] *Id.* at 61-61 (Deposition of Vincent Harris, pp. 171-72; 182-83).
[8] *Id.* at 30-32 (Deposition of Vincent Harris, pp. 86-87; 90).
[9] *Id.* at 60 (Deposition of Vincent Harris, p. 163).
[10] *Id.* at 13-14 (Deposition of Vincent Harris, pp. 59-60).
[11] *Id.* at 11, lines 15-17 (Deposition of Vincent Harris, p. 54, lines 15-17).
[12] *Id.* at 7 (Deposition of Vincent Harris, p. 49).
[13] *Id.* at 7-9 (Deposition of Vincent Harris, pp. 49-51).
[14] *Id.* at 6-7 (Deposition of Vincent Harris, pp. 48-49).
[15] *Id.* at 14-15 (Deposition of Vincent Harris, pp. 59-60).
[16] *Id.* at 15-17 (Deposition of Vincent Harris, pp. 60-62).
[17] *Id.* at 9-10 (Deposition of Vincent Harris, pp. 51-52).
49849

a designation that it was a repeat,[18] and, although Plaintiff would report to the office, he was not required wait in the assignment pool but would go directly to the job site to work the repeat ticket. During his employment with Defendant, Plaintiff worked the following repeat tickets:

- September 2016: Service Master, ServPro, Tiger Stadium[19]
- October 2016: T-Mobile[20]
- November 2016: Woman's Hospital[21]
- November 2016 to March 2017: Port Royal[22]

Plaintiff claims that Defendant removed him from several repeat tickets, including those mentioned above.[23] Defendant does not deny that it sometimes removed Plaintiff from repeat tickets, but Defendant notes that Plaintiff admitted that Defendant offered him work on another ticket soon after he was removed.[24] After Plaintiff was removed from the Port Royal ticket, Defendant gave him another assignment, but Plaintiff only worked that ticket for two days before he quit on March 23, 2017, and he never again returned to work.[25] Defendant maintains that it is not required to assign workers to any particular tickets or to tickets of their choosing; rather, it assigns workers to jobs as it sees fit.

Over the course of this rather short employment period, Defendant claims that he suffered discrimination and harassment based on his race and religion by Francis and

---

[18] *Id.* at 17-19 (Deposition of Vincent Harris, pp. 62-64).
[19] *Id.* at 26-27 (Deposition of Vincent Harris, pp. 79-80).
[20] *Id.* at 27 (Deposition of Vincent Harris, p. 80).
[21] *Id.* at 25 (Deposition of Vincent Harris, p. 77).
[22] *Id.* at 32 (Deposition of Vincent Harris, p. 90).
[23] *Id.*
[24] *Id.* at 36-38 (Deposition of Vincent Harris, pp. 94-96).
[25] *Id.* at 39-42 (Deposition of Vincent Harris, pp. 102-104; 106).

Mueller. Specifically, Plaintiff claims that Defendant has violated his rights in the following ways: Francis twice invited him to attend her church; Francis and Mueller tried to convince a co-worker to stop giving Plaintiff a ride to work; Mueller removed Plaintiff from certain repeat tickets; Francis solicited Christmas donations from workers; Mueller confronted Plaintiff about "calling corporate"; and Plaintiff was suspended from work for one day after he forgot to call in before skipping work to attend his grandmother's funeral.[26]

Plaintiff filed this lawsuit against Defendant claiming that Defendant has discriminated against him and subjected him to a hostile work environment because of his race and religion in violation of Title VII of the Civil Rights Act of 1964.[27] Plaintiff also asserts a retaliation claim under Title VII. Defendant now moves for summary judgment on all of Plaintiff's claims arguing that Plaintiff has failed to demonstrate a *prima facie* case for any of his Title VII claims, and it is entitled to summary judgment as a matter of law.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing

---

[26] Rec. Doc. No. 32-2 at 68-76.
[27] 42 U.S.C. § 2000e *et seq.* To the extent Plaintiff has brought a claim under 42 U.S.C. § 1981, the same standard applies for Title VII and Section 1981 claims of discrimination and retaliation. *See Brandon v. Sage Corp.*, 808 F.3d 266 (5th Cir. 2015).
[28] Fed. R. Civ. P. 56(a).
49849

the evidence."[29] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[30] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[31] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[32]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[33] All reasonable factual inferences are drawn in favor of the nonmoving party.[34] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[35] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to

---

[29] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[30] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[31] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[32] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[33] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[34] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[35] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
49849

support the complaint."'"[36]

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts."[37] A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs."[38] Indeed, "a *pro se* litigant is not 'exempt ... from compliance with the relevant rules of procedural and substantive law.'[39] A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[40]

### B. *Motion to Strike* Plaintiff's Opposition

Defendant has moved to strike[41] portions of Plaintiff's *Affidavit* and the *Affidavit* of Frank Chisholm ("Chisholm") submitted by Plaintiff in support of his *Opposition* to Defendant's *Motion for Summary Judgment*. Plaintiff failed to file an opposition to Defendant's *Motion to Strike*, and under Local Rule 7(f) of the Middle District of Louisiana, the motion is deemed unopposed. Further, Defendant's motion has merit. Although both *Affidavits* are sworn statements, neither affiant attests that his statements are based on personal knowledge and observations. Although this is not fatal, an *Affidavit* must still demonstrate that it is based on personal knowledge of the affiant, which is lacking for both *Affidavits* at issue. Further, Plaintiff's *Affidavit* is rife with inadmissible hearsay and speculation. As this Court has held:

For testimony from an affidavit to be admissible for summary judgment

---

[36] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[37] *Kiper v. Ascension Parish Sch. Bd.*, 2015 WL 2451998, *1 (M.D. La. May 21, 2015)(citing *Callahan v. C.I.R.*, Civ. A. 99-0295-C-M1, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)).
[38] *Id.*
[39] *NCO Financial Systems, Inc. v. Harper–Horsley,* No.07–4247, 2008 WL 2277843 at *3 (E.D.La. May 29, 2008), quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).
[40] *Id.*, citing *Birl*, 660 F.2d at 593.
[41] Rec. Doc. No. 39.

49849

purposes, the affidavit must: 1) be based on personal knowledge, 2) set out facts that would be admissible in evidence, and 3) show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).

Further, it is not enough to merely state that the affidavit is based on personal knowledge, it must be clear that it is also based on facts alleged in the affidavit. *See Bright v. Ashcraft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003)("A declarant must provide evidence to establish that he has personal knowledge of the facts stated."). Personal knowledge means that the affiant "must have had an opportunity to observe, and must have actually observed the fact." *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015). Finally, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005). Any statements that violate the rule[s] may "not [be] considered for summary judgment purposes; any portions of the declarations that are not struck remain part of the summary judgment record." *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015).[42]

Specifically, Defendant challenges Paragraph 4 of Plaintiff's *Affidavit*: "Labor Finders removed [him] from numerous tickets for which [he] was requested to repeat throughout [his] temporary employment from August 2016 until March 23, 2017."[43] Defendant challenges Plaintiff's statement that its clients requested Plaintiff's continued assignment to their projects both on the grounds that he has failed to present any factual basis for this knowledge and because it constitutes inadmissible hearsay under Rule 801 of the Federal Rules of Evidence. Defendant is correct, and Plaintiff has not put forth an opposition. Accordingly, this statement is stricken.

Defendant objects to Paragraphs 5, 6, and 7 of Plaintiff's *Affidavit* on essentially the same grounds. Those paragraphs read as follows: "I was removed from the ServPro

---

[42] *Floyd v. Chilly's L.L.C. of Alabama*, No. 15-00544-BAJ-RLB, 2017 WL 1455024 at *3 (M.D. La. Apr. 21, 2017).
[43] Rec. Doc. No. 36 at 7 (Plaintiff's *Affidavit* ¶4).
49849

ticket. They called for my return."[44] "I was removed from the Service Masters ticket. Patrick had to call for my return."[45] "I was removed from the Women's [sic] Hospital ticket. Mr. Lux had to call for my return."[46] The second sentence in each statement above is stricken for lack of personal knowledge and hearsay. Plaintiff is permitted to state that he was removed from those tickets as it is clear from the record that he has personal knowledge of those facts. However, Plaintiff has not established upon what facts he has personal knowledge that purported clients of Defendant called for his return to these tickets, and further, such statements constitute hearsay.

Defendant objects to Paragraph 8 wherein Plaintiff attests that he "was removed from the Port Royal ticket and replaced with a Caucasian male named John."[47] Plaintiff has failed to provide any factual basis for this personal knowledge or observation; therefore, this Paragraph shall be stricken.

Defendant challenges Paragraph 10 wherein Plaintiff attests: "Lydia Francis and Gary Mueller persuaded Chemwa Thompson to stop providing me with transportation to the office while he was still giving Early, co-worker, transport to the office."[48] Again, this statement lacks a factual basis for the personal knowledge to support the truth of the statement. There is also no corroborating evidence in the record by Chemwa Thompson to bolster this speculative and conclusory statement. This portion of Paragraph 10 shall be stricken.

Defendant also moves to strike Paragraph 12 wherein Plaintiff attests that "Lydia

---

[44] *Id.* (Plaintiff's *Affidavit* ¶5).
[45] *Id.* (Plaintiff's *Affidavit* ¶6).
[46] *Id.* (Plaintiff's *Affidavit* ¶7).
[47] *Id.* (Plaintiff's *Affidavit* ¶8).
[48] *Id.* at 8 (Plaintiff's *Affidavit* ¶10).

49849

Francis solicited donation[] from employees at Labor Finders having them to sign a pledge sheet. I have audio recording of Lydia Francis telling a co-worker to put his name on the paper and what he will pledge to give as donation."[49] Defendant complains that this statement remains unsubstantiated, and this alleged conversation for which Plaintiff contends he possesses an audio recording violates the Best Evidence Rule set forth in Rule 1002. Indeed, the Best Evidence Rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."[50] Plaintiff has not submitted the purported audio recording as evidence of this proffered fact, and Plaintiff's statement of what the audio recording purports to contain violates the Best Evidence Rule. Accordingly, Paragraph 12 shall be stricken.

Defendant also seeks to strike Paragraph 14 of Plaintiff's *Affidavit*, wherein Plaintiff attests that Francis and Mueller "personally threatened to remove" him from the Port Royal ticket in retaliation for calling corporate, as inadmissible hearsay. Defendant acknowledges that such a statement might be subject to the party opponent hearsay exception under Rule 802(d)(2)(D) as a "statement made by the party's agent or employee on a matter within the scope of that relationship and while it existed." However, Defendant maintains that Plaintiff has failed to lay a foundation to establish that Mueller was employed with Defendant at the time of the alleged comment or whether the comment was made in the course and scope of Mueller's employment with Defendant.[51]

The Court finds that Defendant's *Motion to Strike* Paragraph 14 should be denied.

---

[49] *Id.* (Plaintiff's *Affidavit* ¶12).
[50] Fed.R.Evid. 1002.
[51] Rec. Doc. No. 39-1 at 8.
49849

In Defendant's *Memorandum in Support of Motion for Summary Judgment*, Defendant states that, "[f]or the purposes of this motion only, Defendant asserts that there is no dispute as to the following facts … ."[52] Thereafter, Defendant, citing to Plaintiff's deposition testimony, concedes for purposes of its motion that Francis and Mueller operated the Baton Rouge office and supervised Plaintiff.[53] Considering that "*pro se* pleadings are held to less stringent standards than pleadings drafted by lawyers,"[54] and "*pro se* pleadings must be treated liberally,"[55] the Court will deny Defendant's *Motion to Strike* Paragraph 14 as a party opponent hearsay exception pursuant to Fed. R. Evid. 802(d)(2)(D) may apply.

In opposition to Defendant's *Motion for Summary Judgment*, Plaintiff has also submitted the *Affidavit* of co-worker Frank Chisholm. Defendant moves to strike Paragraph 11 Chisholm's *Affidavit* wherein he attests: "Lydia Francis and Gary Mueller knew Vincent Harris is a muslim."[56] Defendant contends this is an unsubstantiated, conclusory statement for which Chisholm fails to lay any factual basis to establish his personal knowledge of the personal knowledge of Francis and Mueller as to his fact. The Court agrees that this is inappropriate testimony without a proper foundation. Paragraph 11 of Chisholm's *Affidavit* is stricken. Nevertheless, Plaintiff testified that he advised Francis and Mueller of his religion, and this testimony is proper evidence before the Court on Defendant's motion.

---

[52] Rec. Doc. No. 32-1 at 3.
[53] *Id.*
[54] *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).
[55] *U.S. v. Robinson*, 78 F.3d 172, 174 (5th Cir.1996); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).
[56] Rec. Doc. No. 36 at 10 (*Affidavit* of Frank Chisholm ¶11).
49849

### C. Title VII Race/Religious Discrimination

Plaintiff claims that the Defendant discriminated against him by removing him from work orders for which he was requested to repeat, by disrupting his transportation to the office, threatening him with more removals from work orders, and suspending him for attending his grandmother's funeral.[57] To prove race and/or religious discrimination under Title VII, Plaintiff must establish that he is (1) "a member of a protected group" (2) "was qualified for the position at issue" (3) "was discharged or suffered some adverse employment action by the employer"; and (4) "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[58] If Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the Defendant to articulate legitimate, non-discriminatory reasons for the adverse actions taken against Plaintiff.[59] If the Defendant satisfies this burden of production, the burden shifts back to Plaintiff, who must "offer sufficient evidence to create a genuine issue of material fact "either (1) that the Defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)."[60]

The Court finds that Plaintiff has failed to establish a *prima facie* case of discrimination for both race and religious discrimination because Plaintiff has failed to present summary judgment evidence to demonstrate the existence of materially disputed

---

[57] Rec. Doc. No. 46.
[58] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).
[59] *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)
[60] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing same in the context of a Title VII race discrimination case).
49849

facts as to whether he suffered an adverse employment action.

Within the Fifth Circuit, "[t]o establish a discrimination claim under Title VII or § 1981, a plaintiff must prove that he or she was subject to an 'adverse employment action'" because of race or religion.[61] Adverse employment actions "consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating."[62] Plaintiff concedes that he was not fired by Defendant.[63] Next, notwithstanding the lack of summary judgment evidence to establish the following allegations, suspending Plaintiff for one day, reassigning him to different work tickets, which is akin to a transfer, and allegedly interfering with Plaintiff's transportation, do not rise to the level of adverse employment decisions as a matter of law.

The Fifth Circuit has repeatedly held that "less favorable work assignments … do not constitute adverse employment actions."[64] Thus, Plaintiff's reassignment to different work tickets does not constitute an adverse employment action or ultimate employment decision. Further, in *Goodwin v. Acadian Ambulance Serv., Inc.*, the United States District Court for the Western District of Louisiana rejected an employee's argument that a one-day suspension without pay was an adverse employment action.[65] The *Goodwin* court relied on the decision by the Southern District of Texas in *Carroll v. City of Dallas, Texas*, wherein the court granted summary judgment in favor of an employer and held that a two-

---

[61] *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).
[62] *Id.*
[63] *See* note 9, *supra*.
[64] *Jackson v. Honeywell Int'l, Inc.*, 601 Fed.Appx. 280, 285 (5th Cir. 2015); *see also*, *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (noting that "[i]t is well established that the denial of a purely lateral transfer is not an adverse employment action redressible under Title VII"); *McGrath v. State ex rel. Dep't of Health & Hosp.*, 253 F.3d 706, 2001 WL 498783, at *3 (5th Cir. 2001) (finding that additional duties and an involuntary change in employee's schedule did not qualify as adverse employment actions).
[65] No. 6:16-cv-0009, 2017 WL 6892994 at *10 (W.D. La. Dec. 5, 2017).
49849

day suspension without pay was not evidence of an adverse employment action against the plaintiff.[66] The *Goodwin* court explained that a "one-day suspension without pay is characterized more accurately as a discrete, interim disciplinary measure rather than an ultimate employment decision."[67] Under the same analysis, the Court finds that Plaintiff's one-day suspension does not rise to the level of an adverse employment action or an ultimate employment decision. While the Court did not locate jurisprudence involving the alleged interference with employee transportation, it likewise does not fall into any of the adverse employment action categories described above. Accordingly, Plaintiff has failed to meet his burden of demonstrating a *prima facie* case of race or religious discrimination because he has failed to demonstrate that he suffered an adverse employment action. Defendant is entitled to summary judgment on Plaintiff's race and religious discrimination claims.

Defendant also moves for summary judgment on Plaintiff's claim of constructive discharge. Plaintiff's *Amended Complaint* does allege that he was "adversely affected by … constructive termination … ."[68] However, in neither of Plaintiff's *Opposition* memoranda submitted in response to Defendant's motion does Plaintiff address or argue his constructive discharge claim, and the Court finds that Plaintiff has abandoned this claim by failing to oppose or address it in his *Oppositions* to Defendant's motion.[69] Additionally, Plaintiff's claim of constructive discharge would fail on the merits as the law

---

[66] No. 3:04cv2640-H, 2005 WL 3543347 (N.D. Tex. Dec. 28, 2005).
[67] *Goodwin*, 2017 WL 6892994 at *10.
[68] Rec. Doc. No. 25 at 1.
[69] The law is clear that "[f]ailure to address a claim in response to a defendant's summary judgment motion constitutes abandonment of the claim." *Valenza v. Wal-Mart Stores, Inc.*, No. 16-2469, 2016 WL 7407178 at * 4 (E.D. La. Dec. 22, 2016)(quoting *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001)).
49849

is clear that "[c]onstructive discharge requires a *greater degree of harassment* than that required by a hostile environment claim."[70] Because Plaintiff has failed to demonstrate a *prima facie* case of hostile work environment, as will be set forth below, any claim of constructive discharge fails as a matter of law.

### D. Title VII Hostile Work Environment

Plaintiff also claims he was subjected to a hostile work environment based on his race and religion. However, Plaintiff's pleadings are devoid of argument, law, or evidence demonstrating a *prima facie* case of racial or religious hostile work environment. Four elements are required to establish a hostile-work-environment claim: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment."[71] Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment."[72] In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[73]

---

[70] *Lauderdale v. Texas Dept. of Criminal Justice, Inst. Div.*, 512 F.3d 157, 167 (5th Cir. 2016)(quoting *Kinney Shoe*, 237 F.3d at 566)(emphasis added).
[71] *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (quoting *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162–63 (5th Cir. 2007)).
[72] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).
[73] *Moore v. United Parcel Serv., Inc.*, 150 Fed.Appx. 315, 319 (5th Cir. 2005) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).
49849

"Critically, Title VII is not a 'general civility code.'"[74] Plaintiff must show that the conduct of which he complains occurred *because of* his race and his religion.[75] Plaintiff's subjective belief that alleged harassment occurred because of a protected characteristic is insufficient.[76]

The Court ascertains from Plaintiff's pleadings that he alleges he was subjected to harassment based on the following alleged conduct: being removed from repeat tickets and reassigned to other tickets; being invited to attend Francis' church on two occasions; Francis' solicitation of Christmas donations for her church; the interference with Plaintiff's transportation to work; an incident of Mueller encouraging Plaintiff to attend Francis' church; and alleged threats of removal from tickets. Notably, none of these allegations have any overt connection to Plaintiff's race, nor does he allege such a connection. Further, Plaintiff essentially admitted in his deposition that he was not subjected to racial harassment, and he only alleged race discrimination based on his belief that he was replaced on the Port Royal ticket by a Caucasian employee.[77]

---

[74] *Heath v. Southern University System Foundation*, 2017 WL 2972909 at *5 (quoting *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)) (explaining that the elements of a hostile work environment claim "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' "); *Clark v. S. Broward Hosp. Dist.*, 601 Fed.Appx. 886, 900 (11th Cir. 2015) (quoting *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006)) ("Title VII is not a 'general civility code' and does not make 'ordinary [workplace] tribulations' actionable, so not all objectionable language and conduct will support a Title VII harassment claim.") (*alteration in original*); *Reine v. Honeywell Int'l Inc.*, 362 Fed.Appx. 395, 397–98 (5th Cir. 2010) ("This high standard for judging hostility is specifically intended to prevent Title VII from becoming a 'general civility code' for the workplace.")).

[75] *See Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005)) ("Even if we assume that [defendants'] actions were abusive, [plaintiff] must 'prove that she was the target of harassment because of her sex and that the offensive behavior was not merely non-actionable, vulgar behavior.'").

[76] *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed.Appx. 104, 107 (5th Cir. 2009) ("Though [the plaintiff] may believe that all twelve incidents were motivated by racial animus, subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment."); *Nichols v. Lewis Grocer*, 138 F.3d 563, 570 (5th Cir. 1998) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991)) ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.") (*alteration in original*).

[77] Rec. Doc. No. 32-2 at 44 (Deposition of Vincent Harris, p. 112).

49849

When Mueller allegedly threatened to remove Plaintiff from the T-Mobile ticket, Plaintiff admitted that Mueller made no reference to Plaintiff's race or religion.[78] Plaintiff recounted in his deposition hearing that his supervisors and co-workers spoke negatively about him behind his back and allegedly stopped someone from giving him a ride to work.[79] However, Plaintiff was asked if he was ever told that his race or religion was ever mentioned in any of these conversations, and he replied, "no."[80] With respect to the invitation and encouragement to attend Francis' church, Plaintiff testified as follows:

> Q: Okay. So this statement, "Gary asked, 'Vincent, are you a church-going person?' I said, 'No. Not really. Every now and then I go worship.' He said, 'You really ought to consider going to Lydia's church.' I replied, 'I will think about it.'" Did I read that accurately?
> A: Yes.
> Q: Okay. Did that exchange happen at the same time that Lydia invited you to go to her church at the end of November?
> A: Yes.
> Q: All right. Was there anything else that was said during that exchange?
> A: I don't recall anything because Frank was explaining that he was intending to come, and they had some words. I just remember the invitation being extended.
> Q: Did Lydia say anything about your religion in the exchange?
> A: No, she didn't.
> Q: Did Gary say anything about your religion in the exchange?
> A: No, he didn't say anything.
> Q: What about –
> A: Gary didn't say anything.
> Q: About your race? Did Lydia say anything about your race during the exchange?
> A: No.
> Q: What about Gary? Did he say anything about your race?
> A: No. [81]

---

[78] *Id.* at 45-46 (Deposition of Vincent Harris, pp. 119-120).
[79] *Id.* at 50-53 (Deposition of Vincent Harris, pp. 132-134, 137).
[80] *Id.* at 53, line 14 (Deposition of Vincent Harris, pp. 137, line 14).
[81] *Id.* at 47, lines 15-25 through p. 48, lines 1-21 (Deposition of Vincent Harris, p. 125, lines 15-25 through p. 126, lines 1-21).
49849

Plaintiff's complaints that he was invited to Francis' church, encouraged to attend Francis' church, and asked for a Christmas donation also fail to satisfy the hostile work environment standard. In *Alansari v. Tropic Star Seafood Inc.*, a case involving a claim of a religiously hostile work environment brought by a Muslim employee, the Eleventh Circuit affirmed summary judgment in favor of the employer, noting that behavior "including solicitations to go to church because 'Jesus would save' [him], other comments about his Muslim religion, and the playing of Christian music on the radio ... may have been unwanted and even derogatory ... but it did not rise to a threatening or humiliating level."[82]

As set forth above, Plaintiff's own deposition testimony undermines his subjective belief that a religious animus motivated any of the allegedly harassing conduct of which he complains. Plaintiff has failed to direct the Court to any evidence of negative statements about his religion in general or particular to him or any criticism of his religious beliefs. Plaintiff has speculated that he was mistreated because he is Muslim; however, he has offered no evidence other than his own subjective belief in support of this contention.[83] Further, Plaintiff has likewise failed to demonstrate that such conduct was so severe or pervasive that it affected a term, condition, or privilege of his employment. As Plaintiff has failed to demonstrate a *prima facie* case of racial or religious hostile work environment, Defendant is entitled to summary judgment on this claim.

**E. Retaliation**

Plaintiff maintains that he was subjected to retaliation for complaining to corporate about his treatment by way of threats of removal from repeat tickets and interference with

---

[82] 388 Fed. Appx. 902, 905 (11th Cir. 2010).
[83] *See Fontana v. Johnny's Pizza House*, No. 07-2046, 2009 WL 1491182 at *4 (W.D. La. May 27, 2009); 49849

his work transportation. To establish a *prima facie* case of retaliation under the traditional *McDonnell Douglas* framework, "the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."[84] An employee engages in activity protected by Title VII when the employee has "opposed any practice made an unlawful employment practice" by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[85] The Supreme Court has explained that, to demonstrate retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[86]

Defendant moves for summary judgment on Plaintiff's retaliation claim, arguing that Plaintiff has failed to demonstrate that he engaged in Title VII protected activity. Plaintiff testified that he called and left a voicemail for Charlotte Greco, who works in Defendant's corporate office, in which he complained that "there was a problem" with Francis and Mueller.[87] Plaintiff admitted that he did not complain of race or religious discrimination or harassment in this voicemail,[88] but he did complain that Francis and Mueller "stopped [his] ride from coming to pick [him] up at the office."[89] Plaintiff testified

---

[84] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).
[85] 42 U.S.C. § 2000e–3(a); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).
[86] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (citations omitted).
[87] Rec. Doc. No. 32-2 at 56, lines 16-17 (Deposition of Vincent Harris, p. 140, lines 16-17).
[88] *Id.*
[89] *Id.*, lines 20-21. (Deposition of Vincent Harris, p. 140, lines 20-21).
49849

that Greco returned his call and left him a message, which Plaintiff returned, but Plaintiff testified that Greco never returned any other calls.[90] In his deposition, Plaintiff was asked, "But in all of your voice messages with Charlotte Greco, the problem that you were raising with her was that they stopped your ride, right?" Plaintiff responded, "Right."[91]

Defendant contends Plaintiff has failed to establish prong one of his *prima facie* case under Fifth Circuit jurisprudence holding that "[c]omplaining about unfair treatment without specifying why the treatment is unfair, however, is not a protected activity."[92] Indeed, based on the discussion set forth above regarding Plaintiff's hostile work environment claim, even had Plaintiff made contact with Greco to expound on his complaint regarding his problems with Francis and Mueller, he admitted in his deposition that he was unaware of any negative statements regarding his race or religion in connection with ticket removals or his transportation, and he has failed to present competent summary judgment evidence to demonstrate that a genuinely disputed issue of fact exists on this point. Accordingly, Plaintiff has failed to demonstrate that he was engaged in Title VII protected activity, and Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

---

[90] *Id.* at 54 (Deposition of Vincent Harris, p. 138).
[91] *Id.* at 57, lines 10-14 (Deposition of Vincent Harris, p. 141, lines 10-14).
[92] *Tratree v. BP North American Pipelines, Inc.*, 277 Fed. Appx. 390, 395 (5th Cir. 2008)(citing *Harris-Childs v. Medco Health Solutions*, 169 Fed.Appx. 913 (5th Cir. 2006)). *See also Moore v. United Parcel Services, Inc.*, 150 Fed. Appx. 315, 319 (5th Cir. 2005)(finding plaintiff was not engaged in protected activity as his grievance did not oppose or protest racial discrimination or any other unlawful practice under Title VII).
49849

## III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[93] filed by Defendants is GRANTED. Plaintiff's case is dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>January 31, 2019</u>.

*[signature: Shelly D. Dick]*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[93] Rec. Doc. No. 32.
49849